## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **BRYAN MAJESKI and DAWN MAJESKI,** | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | **08 CV 5583** |
| **v.** | ) | |
| | ) | |
| **I.C. SYSTEM, Inc., a Minnesota** | ) | **Honorable David H. Coar** |
| **Corporation,** | ) | |
| | ) | |
| | ) | |
| *Defendant*. | ) | |

### MEMORANDUM OPINION AND ORDER

Before this Court is a Motion for Summary Judgment filed by Bryan and Dawn Majeski ("Plaintiffs") against I.C. System, Inc. ("Defendant"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq* ("FDCPA").   Plaintiffs seek summary judgment in their favor on their claims under §§ 1692d, 1692e, 1692f, and 1692g of the Act.  For the reasons stated below, Plaintiffs' Motion for Summary Judgment is DENIED.

### FACTS

On October 10, 2007, Bryan Majeski brought his daughter, who suffered from a dog bite on the lip, to the office of Dr. Jerry Chow. (Plaintiffs' Rule 56.1 Statement of Material Facts ("Pl. SOF") ¶ 5; Defendant's Rule 56.1 Statement of Material Facts ("Def. SOF") ¶ 21.)  The Majeskis' daughter underwent plastic surgery on October 11, 2007. (Def. SOF ¶ 21, Response;

1

B. Majeski Dep. 21:2-6.)  That day, Bryan Majeski signed a copy of the "Office Policies and

Procedures" and an authorization agreement.  (Pl. SOF ¶ 5.)  The office policy document

contains the following clause:

> If your account balance is unpaid and overdue after three monthly statements or
> more and you have not responded to any of our attempts to contact you, your
> account will be referred to a collection agency (IC Systems, Inc.). . . . please note
> that we will only proceed to these measures if you do not respond to our attempts
> to communicate with you and set up a payment plan.  (Pl. Ex. B at 1.)

Meanwhile, the authorization agreement states the following:

> I accept full responsibility for bill payment to include any amount not covered
> under my insurance.  That in the event collection efforts are necessary and suit
> filed against me relative to any bills I incur, I agree to pay reasonable attorney's
> fees and costs of said proceeding incurred by Dr. Chow.  All delinquent accounts
> shall bear the collection fee of nineteen (19%) percent commencing (45) days
> after you have been billed. (Pl. Ex. B at 3.)

On November 9, 2007, Plaintiffs' insurance company paid down the bulk of their medical

bill, leaving an outstanding balance of $293.80.  (Def. SOF ¶ 21.)  Plaintiffs testified that they

only received two billing statements, the first dated November 30th and the second dated

December 3rd.  (Pl. SOF ¶ 6.)  The issuance of any additional bills is a disputed matter.  Soon

thereafter, around December 27th or 28th, Dr. Chow's office turned Plaintiffs' account over to

Defendant for collection. (Pl. SOF ¶ 7.)

On December 28th, Defendant sent Plaintiffs a letter seeking payment of the primary

debt, plus a 19% collection fee. (Pl. SOF ¶ 7.)  On December 30th, Defendant's employee

Tamara McBride called the Majeski residence and a conversation ensued. (Pl. SOF ¶ 8.)

Plaintiffs refused to pay the debt and collection fee. (Pl. SOF ¶ 9.)  Defendant registered a formal

debt dispute from Plaintiffs on January 8, 2008.  (Def. SOF ¶ 22.)

2

In accordance with its debt validation procedures, Defendant obtained documents from

Dr. Chow's office allegedly substantiating the debt, sending copies to Plaintiffs on January 22,

2008. (*Id.*)  The following month, Defendant commenced calling Plaintiffs at their home at

regular intervals.  All told, between December 2007 and June 2008, Defendant called Plaintiffs

approximately 67 times.[1]

Defendant reported Plaintiffs' debt to credit reporting agencies on February 17, 2008.

(Def. SOF ¶ 23.)  Plaintiffs paid off their primary debt on March 14, 2008. (Pl. SOF ¶ 15; Def

Ex. 3 at 0045.)  Defendant continued its attempts to collect the 19% collection fee until August 8,

2008, when Dr. Chow's office sent an email requesting that the account be considered settled in

full. (Spencer Dep. 106:16-107:3.)


## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c). A genuine

issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The party

seeking summary judgment bears the burden of establishing that no genuine issue of material

fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden,

the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient)

demonstrating that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at

252.

---

[1] Although the parties in their pleadings both agree that 67 phone calls were made, the cited phone report only shows evidence of 59 attempts. According to the log, 8 of the 67 calls, while loaded into the dialer, were never attempted. (Pl. SOF Ex. E.)

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *See Schuster v. Lucent Tech., Inc*., 327 F.3d 569, 573 (7th Cir. 2003).  At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact."  *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co*., 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

### I. FDCPA § 1692d

Section 1692d of the FDCPA prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. §1692d.  Plaintiffs allege that Defendant violated §1692d by placing multiple phone calls and repeatedly yelling at Plaintiffs.

#### A. Section 1692d(5): Volume and Pattern of Telephone Calls

Section 1692d(5) states that the FDCPA is violated when a party "[causes] a telephone to ring or engage[es] any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  15 U.S.C. §1692d(5).  Over the course of six months, Defendant called the Majeskis about 67 times. (Pl. SOF ¶ 12; Ex. E.)  At times, weeks passed between calls; with only three calls placed during March and one during April. At other times, Defendant made multiple call attempts in one day, leaving messages on the

Plaintiffs' answering machine at approximately two to five hour intervals.  According to the record, Defendant made six call attempts on May 7, 2008, resulting in five answering machine messages and one hang-up by the recipient.  At least twenty-seven call attempts were made in the month of February, all but three apparently resulting in answering machine messages or hang-ups.  *Id.*  At least twenty phone calls were attempted in the month of May.  *Id.*

Actionable harassment or annoyance turns on the volume and pattern of calls made, irrespective of the substance of the messages.  *See, e.g.*, *Sanchez v. Client Services, Inc.*, 520 F.Supp.2d 1149, 1160-61 (N.D. Cal. 2007) (54 telephone calls to debtor's workplace in six months, 17 of which made in the same month and six on one day alone, violated § 1692d(5)); *Kuhn v. Account Control Tech., Inc.*, 865 F.Supp. 1443, 1452-53 (D. Nev. 1994) (six telephone calls in 24 minutes constituted harassment in violation of § 1692d(5)); *Bingham v. Collection Bureau, Inc.*, 505 F.Supp. 864, 873 (D. N.D. 1981) (when a call was terminated and collection agency called back immediately, the subsequent call alone could constitute harassment under § 1692d(5)).

Sometimes, however, the reasonableness of the volume and pattern of telephone calls is a question of fact best left to a jury.  *See, e.g.*, *Akalwadi v. Risk Management Alternatives, Inc.*, 336 F.Supp.2d 492, (D. Md. 2004) (citing *Narwick v. Wexler*, 901 F.Supp. 1275, 1282 (N.D. Ill. 1995)) (reasonableness of 26 to 28 calls over two months, at times on a daily basis, with up to three calls within five hours in a single day, was a question of fact for the jury); *Joseph v. J.J. Mac Intyre Companies, LLC*, 281 F.Supp.2d 1156, 1164-65 (N.D. Cal. 2003) (declining to decide whether 75 phone calls constituted a pattern of harassment because the issue "cannot be decided as a matter of law."); *Joseph v. J.J. Mac Intyre Companies, LLC*, 238 F.Supp.2d 1158, 1169 (N.D. Cal. 2002) (finding it a "triable issue of fact" whether 200 calls over a 19-month

period constituted harassment, when on some days, multiple calls were placed within hours of plaintiff's requests for no further calls.).

The Court acknowledges that the district court in *Sanchez* granted its plaintiff summary judgment based on a similar volume and pattern of calls. The fact that all telephone calls in *Sanchez* were made to the debtor's workplace, as well as to her husband and other family members, are distinguishing factors that give the Court pause, however. *See Sanchez*, 520 F.Supp.2d at 1160-61. In contrast, the district court in *Saltzman v. I.C. System* dealt with a plaintiff subjected to a month of telephone calls every day, several times a day, at her residence. *See Saltzman,* No. 09 10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept 30, 2009). The *Saltzman* court held that, without more, the calling pattern did not constitute "evidence that Defendant has acted in a manner that would be actionable as harassment, oppression, or abuse." *Id.* The court further noted that the "significant disparity between the number of telephone calls placed by Defendant with Plaintiff and the number of actual successful conversations with Plaintiff . . . suggests a difficulty of reaching Plaintiff, rather than an intent to harass." *Id.* (citation omitted).

Like the plaintiff in *Saltzman*, Plaintiffs screened their phone calls and, if Defendant's phone logs are accurate, answered the phone extremely rarely. (Pl. Ex. E.) Also of potential relevance to a juror is the fact that, once Plaintiffs disputed the debt in early January, Defendants withheld all phone calls until it received information from Dr. Chow's office allegedly substantiating the referred debt, and mailed the documents to the Majeskis. ( D. Majeski Dep. 30:6-31:17; Spencer Dep. 34:18-35:18; Pl. Ex. F.) Upon receiving the documents, Plaintiffs apparently took up their continuing dispute with the doctor's office rather than the Defendant, event though Defendant's letter instructed debtors to immediately contact Defendant's office

with disagreements.  (B. Majeski  Dep. 63:5-68:20; Pl. Ex. F.)  Defendant promptly began

placing a high volume of automated, but largely unanswered, phone calls to the Majeski home in

February until the primary bill was paid a month later.  (*Id.*; D. Majeski Dep. 42:19-44:20; Pl.

Ex. E.)  Phone calls increased again in May regarding the collection fee, but stopped after

Plaintiffs sent a cease and desist letter. (*Id.*)

      The astonishingly high frequency of calls placed by Defendant during February and May

could easily be interpreted as indicative of Defendant's intent to harass by a reasonable juror.

However, the Court hesitates to assume that no reasonable juror could find otherwise, given the

circumstances.  Because the Court cannot conclude that the volume and pattern of calls in the

instant case shows that the Defendant intended to annoy, abuse, or harass Plaintiffs as a matter of

law, Plaintiffs are not entitled to summary judgment on this claim.


**B. Section 1692d(2): Abusive Language**

    FDCPA § 1692d (2) prohibits a debt collector from resorting to the use of "obscene or

profane language or language the natural consequence of which is to abuse the hearer or reader."

15 U.S.C. §1692d(2).  Plaintiff alleges that, in violation of this subsection, Defendant's

employee called the Majeskis on December 30, 2007, yelled at them, demanded payment "now,"

and threatened to "destroy" their credit. (Pl. SOF ¶ 8; B. Majeski Dep. 15:5-19;19.)

      Even as alleged, Plaintiffs' complaints strain to support a colorable claim.  Section

1692d(2) is "meant to deter offensive language which is at least akin to profanity or obscenity,

and such offensive language might encompass name-calling, racial or ethnic slurs, and other

derogatory remarks."  *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (11th Cir. 1985).

Yelling and rude language, while disrespectful, does not by itself violate § 1692d.  *See Thomas v.*

*LDG Financial Services, LLC*, 463 F.Supp.2d 1370 (N.D. Ga. 2006) (finding that alleged behavior did not state a claim under §1292d, where debt collector yelled at debtor and hung up on her); *Guajardo v. GC Services, LP*, No. H-08-119,  2009 WL 3715603, at *3 (S.D. Tex. 2009) (where debt collector called debtor a "liar", said "I can tell the kind of life you live by the fact that you don't pay your bills on time," and demanded payment in 24 hours "or else," the court held that "[t]he offensive remarks . . . are certainly unpleasant, but do not clearly rise to the level of abuse or harassment as a matter of law . . .[plaintiff] does not allege that [defendant] ever used obscene or profane language, threatened violence, or misrepresented its true purpose in any communication.").

In any event, the language and behavior of Defendant's employee are issues of material fact.  Defendant has presented an affidavit by Tamara McBride, the individual who spoke with Mr. Majeski on December 30, in which McBride denies ever yelling at Plaintiffs, demanding immediate payment, or threatening to destroy their credit. (Def. Response, Ex. 4.)

Plaintiffs demand that the affidavit be stricken because the Defendant never produced it during discovery. (Pl. Reply at 8.) However, Defendant produced McBride's name, telephone number, and address in its answer to Plaintiffs' interrogatories, identifying her as an employee who worked on the Majeskis' account and was likely to have discoverable information. (Def. Ex. 5 ¶ 1.)  Plaintiffs were free to depose McBride if they so wished. The fact that Plaintiffs declined to do so does not prevent Defendant from relying on McBride's affidavit in their response to set out specific facts showing a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e)(2).

Plaintiffs further complain that McBride does not make her statement on personal knowledge because, two years after the phone call, she cannot remember whether she spoke to Bryan or Dawn Majeski.  Here, Plaintiffs conflate personal knowledge with credibility.

McBride's knowledge is indisputably based on her personal telephone conversation with one of the Plaintiffs.  Her credibility, admittedly compromised by her inability to recall the details of this conversation, is an issue for a jury, not the Court, to assess.  *See Nat'l Athletic Sportswear*, 528 F.3d at 512. Given the above, summary judgment on Plaintiffs' 1692d(2) claim is inappropriate.

## II. FDCPA §§ 1692e and 1692f: False & Unfair Collection Activities

Section 1692e generally prohibits "false, deceptive, or misleading" collection activities, including the "false representation of the character, amount, or legal status of any debt" or communication "to any person credit information which is known or which should be known to be false." 15 U.S.C. §1692e(2)(A) and (8). Section 1692f, for its part, states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f.  Prohibited specifically is the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. §1692f (1).  Plaintiffs contend that Defendant violated these provisions of the FDCPA by making a false negative credit report and attempting to collect a 19% collection fee, through letters and phone calls, on a debt that was not yet due.

The situation is a tangled one. After Plaintiffs disputed their debt in early January 2008, Defendant followed standard procedure by requesting validation of the debt from their client. (Pl. SOF ¶ 10.)  Dr. Chow's office subsequently submitted to Defendant a copy of office policies and an authorization agreement, both signed by Bryan Majeski on October 11, 2007.  (*Id.*; Pl. Ex.

B; Ex. F.)  Dr. Chow's office also appears to have sent information on the balance due and an

itemized statement, presumably showing that Plaintiffs' insurance paid the bulk of their bill on

November 9, 2007, leaving a remainder of $293.80.[2] (Spencer Dep. 41:2-4; Def. Ex. 1.)  The

remaining balance on Plaintiff's account was received by Defendant for collection 48 days after

this date, on December 27, 2007.  (Pl. SOF ¶ 7.)

      The authorization agreement states that "[a]ll delinquent accounts shall bear the

collection fee of nineteen (19%) percent commencing (45) days after you have been billed." (*Id.*

at 3.)  The record does not specify whether Plaintiffs were first billed within the meaning of the

contract on November 9, when the insurance payment was processed to leave a balance for

Plaintiffs, or on November 30, the date on the mailed billing statement Plaintiffs allegedly first

received. (Def. Ex. 1; Pl. SOF ¶6.)  To further complicate matters, the signed "Office Policies

and Procedures" states that "[i]f your account balance is unpaid and overdue after three monthly

statements or more and you have not responded to any of our attempts to contact you, your

account will be referred to a collection agency (IC Systems, Inc.)." (Pl. Ex. B at 1.)

      Since the October surgery, Plaintiffs allegedly only received two "billing statements",

dated November 30th and December 3rd.[3] (Pl. SOF ¶ 6.)  Plaintiffs argue that, upon reviewing

the documents, Defendant should have inquired into whether Plaintiffs had been issued three

monthly statements, after which it would have realized that Plaintiffs were sent to collections too

early.  In sum, Plaintiffs assert that Defendant violated FDCPA §§ 1692e and 1692f by

continuing to pursue their debt collection procedures when the company had, or should have had,

---

[2] The itemized statement is not included in the record, although the other two documents were. The Court has
deduced its contents from the statement of account received by Plaintiffs on December 3. (Def. Ex. 1.)
[3] Defendant argues that Plaintiffs were sent a monthly statement on November 9, citing a letter written on April 3,
2008, by Dr. Chow's business director for mediation purposes. (Pl. SOF ¶ 6, Response; Def. Ex. 2.)  The director's
statements are inadmissible as hearsay and as such cannot be considered for this motion. Fed. R. Evid. 801.

actual knowledge of the invalidity of Plaintiffs' debt.[4]

Defendant argues that this claim is not ripe for summary judgment because the validity of the debt is disputed, as is the availability of the "bona fide error" defense. "In lieu of a scienter requirement, the FDCPA provides a defense 'if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.' " *Randolph v. IMBS, Inc*., 368 F.3d 726, 730 (7th Cir. 2004) (quoting 15 U.S.C. § 1692k(c)).

Three questions thus confront the Court in its analysis. Firstly, did Defendant violate the FDCPA, either before or after its investigation? If so, were Defendant's initial and post-dispute debt validation procedures "reasonably adapted to avoid any such error?" With regard to pre-dispute procedures, Defendant is entitled to rely on its client's obligation to deliver accurate account information on reported debts. *See Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) (debt collector was not required to initially conduct independent investigation of debt referred for collection); *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995-96 (7th Cir. 2003) (agreement with creditor-clients that debts are current and the demand letter was sent soon after assignment meets reasonable procedure requirement); (Def. SOF ¶ 25; Def. Ex. 10). Post-dispute procedures are another matter, however. In that inquiry, a fact-finder must ask whether it was appropriate for Defendant to base its assessment of Plaintiffs' disputed debt on a procedure that limited itself to the types of documents Dr. Chow's office had submitted. Given the poorly composed language of Dr. Chow's patient agreements, should Defendant have required additional information? Finally, notwithstanding its presumably satisfactory preventative measures, could

---

[4] Arguably, the debt remained invalid if Plaintiffs had not yet received their third monthly statement by the time Defendant resumed its collection activities. The record is silent on this point. Plaintiffs might also be proposing that Defendant could not seek to collect on the 19% fee until 45 days after the third billing date, extending the time within which Defendant was prohibited from collecting on the expanded debt. These theories do not make Plaintiffs' §§ 1692e and 1692f claims any more suitable for summary judgment in their favor.

Defendant have acted unintentionally due to a bona fide error?  That is, given the documentation obtained in its validation procedures, could Defendant have reasonably continued to believe that the debt was valid?

The Court cannot definitively answer these questions without additional evidence. As to the validity of Plaintiffs' debt, the record leaves unsettled the number – and arguably, the relevance – of the monthly statements and exact billing dates.  Plaintiffs' December statement indicates a number of dates on which they may have been billed between October and December 2007.  The lack of a "past due" amount beyond 30 days implies that no payment was owing prior to November, but the lack of clear annotation prevents the Court from drawing firmer conclusions regarding Dr. Chow's billing practices.  (Def. Ex. 1.) [5]

Furthermore, the Court struggles to assess the reasonableness of Defendants' validation procedures without greater insight into the process and all of the documents at Defendant's disposal during its investigation.  At any rate, the Court is swayed by Judge Aspen's observation in *Narwick v. Wexler*, 901 F.Supp. at 1282.  In his analysis of the "bona fide error" defense, Judge Aspen noted that "the inquiry into whether a debt collector's procedures are reasonable is, by its nature, fact-intensive, and should therefore typically be left to the jury." *Id.*

While a debt collector with actual knowledge of the invalidity of a debt can certainly be held liable under the FDCPA for its continued collection efforts, the state of the evidence on record prevents the Court from concluding as a matter of law that Defendant either intentionally violated the FDCPA or that a bona fide error occurred, despite procedures reasonably adapted to avoid such an event.  The Court therefore denies summary judgment on Plaintiffs' §§ 1692e and

---

[5] Absent further information on the doctor's billing practices, it is also unclear how the "three monthly statement" and "45-day" clauses operate in tandem. If, for example, "bills," i.e. invoices, differ from "statements," i.e. records of the status of patients' accounts, then there is no ambiguity. If "bills" and "statements" are the same type of document, then the clauses appear to be at odds.

1692f claims.

### III. FDCPA §1692g: Overshadowing the Validation Period

Under § 1692g, a debt collector must send a consumer a written validation notice within five days of its initial communication with said consumer, informing him or her of the right to dispute the validity of the debt within 30 days after receipt of the notice.  15 U.S.C. § 1692g(a)(1)-(5).  The provision further provides that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt."  15 U.S.C. § 1692g(b).  Any demands for immediate payment made during this 30-day validation period, due to the confusion it produces regarding the extent of a debtor's validation rights, thus violates § 1692g. *See Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997); *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997).

Plaintiff argues that Defendant violated §1692g by making demands for payment "now" on December 30th, before the expiration of Plaintiffs' 30-day validation period.  Summary judgment is inappropriate here because, as mentioned earlier, Tamara McBride's alleged demand for immediate payment during the December 30th phone conversation is an issue of material fact.[6]

---

[6] Noting that Plaintiffs received their validation notice a day after McBride allegedly demanded immediate payment, (B. Majeski Dep. 95:3-19), Defendant in its brief urges the Court to enter judgment in its favor because "there is no possible way for the alleged conduct on December 30, 2007 to support an overshadowing violation of §1692g." (Def. Resp. at 15.)  For its proposition, Defendant cites the reasoning of *Phillips v. North American Capital Corp.*, Case No. 98 C 7538, 1999 WL 299872, at *2 (N.D. Ill. Apr. 30, 1999).  The *Phillips* court held that the language of the FDCPA only prohibited demands for immediate payment made during the 30-day validation period.  *Id.*  The court concluded that a "demand for payment that predates a validation letter by no more than five days does not violate the statute."  *Id.*  Plaintiffs point out that reading the FDCPA to permit a five day "fire-free zone" for actively deceptive practices would eviscerate consumer validation rights, contrary to the core purpose of the statute.  Indeed,

# CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment on their

FDCPA claims is DENIED.


Enter:

/s/ David H. Coar

_____

David H. Coar
United States District Judge

Dated:  **January 8, 2010**

---

Congress enacted the FDCPA to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988) (quoting S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699).  Congress specifically added §1692g "to ensure that debt collectors gave consumers adequate information concerning their legal rights." *Id.* (citing 1977 U.S. Code Cong. & Admin. News at 1702). While the *Phillips* court articulates a semantically precise interpretation of §1692g, this Court finds the contradiction between the plain language of the statute and the absurd results it suggests troubling. Given the disputed facts and Defendant's failure to file a cross-motion for summary judgment, however, the Court sees no need to resolve the controversy at this time.